Eric J. Shimanoff (ejs@cll.com)
Mark Montague (mxm@cll.com)
Joelle A. Milov (jam@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, New York 10036-1525
(212) 790-9200
*Attorneys for Plaintiff and Counterclaim Defendant*
*Wine Enthusiast, Inc.*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

WINE ENTHUSIAST, INC.,

        Plaintiff and Counterclaim Defendant,

    against

VINOTEMP INTERNATIONAL CORPORATION,

        Defendant and Counterclaim Plaintiff.
------------------------------------------------------------- x

No. 17 Civ. 6782 (DLC) (HP)


**WINE ENTHUSIAST, INC.'S MEMORANDUM OF**
**<u>LAW IN SUPPORT OF ITS MOTION TO BIFURCATE</u>**

Plaintiff and Counterclaim Defendant Wine Enthusiast, Inc. ("Wine Enthusiast") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 26 and 42(b) of the Federal Rules of Civil Procedure, to bifurcate for purposes of discovery and trial the issue of Defendant and Counterclaim Plaintiff Vinotemp International Corporation's ("Vinotemp") trade dress validity, on the one hand, and the issues of trade dress infringement and damages, on the other hand, such that discovery and trial on the issue of trade dress validity is conducted before discovery and trial on the issues of trade dress infringement and damages.  In the alternative, Wine Enthusiast requests that the Court limit discovery on the trade dress claim at this time to the issue of trade dress validity and provide an early deadline for summary judgment on the issue.  Wine Enthusiast does not request modification to the Court's initial case management order as the schedule therein relates to Vinotemp's unrelated patent infringement claim based on U.S. Patent No. 7,882,967.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ........................................................................................................2

LEGAL STANDARD.................................................................................................................9

ARGUMENT ...........................................................................................................................10

I.      THE COURT SHOULD BIFURCATE THE ISSUES OF TRADE DRESS
        VALIDITY AND TRADE DRESS INFRINGEMENT/DAMAGES ...............................10

        A.      The Dispositive Issue of Trade Dress Validity and the Speculative
                Nature of Vinotemp's Purported Trade Dress Rights Warrant
                Bifurcation in this Case........................................................................................10

                1.      Trade Dress Validity Is a Threshold Issue that Is Case
                        Dispositive ................................................................................................10

                2.      Vinotemp's Will Not Be Able to Carry Its Burden to Show
                        It Is Entitled to Trade Dress Protection over Common,
                        Decorative and Utilitarian Features of Wine Refrigerators .....................12

        B.      Bifurcation is Conducive to Expedition and Economy..........................................18

        C.      Bifurcation Will Not Prejudice Vinotemp ............................................................19

CONCLUSION.........................................................................................................................20

## PRELIMINARY STATEMENT

This case is especially well-suited for bifurcation.  Vinotemp alleges that Wine Enthusiast's sale of wine refrigerators with glass doors and black shelf fronts—decorative and utilitarian features common in wine refrigerators offered by many manufacturers—infringes Vinotemp's purported unregistered trade dress rights in those elements.  As the claimant of unregistered trade dress, Vinotemp has the initial burden to show that its purported trade dress is valid, in that the trade dress: (1) has acquired distinctiveness through secondary meaning, identifying to consumers the *source* of Vinotemp's products; (2) is non-functional; and (3) is not generic or overbroad.  Only if Vinotemp meets this extraordinary onus will the Court determine whether consumers are likely to believe mistakenly that the wine refrigerators sold by Wine Enthusiast originate from Vinotemp and, if so, whether Vinotemp is entitled to damages.  Absent protectable trade dress, Vinotemp's infringement claim fails as a matter of law.

Vinotemp will not be able to prove that its purported trade dress is valid.  Various third parties have sold wine refrigerators with glass doors and black shelf fronts both before and after Wine Enthusiast first launched its own products, thus precluding a finding that these common features indicate the source of Vinotemp's goods.  Moreover, Vinotemp's claimed trade dress is functional because it serves utilitarian and aesthetic purposes for wine storage.  The shelf fronts help keep the wine bottles in place and help users slide the shelves in and out to view, store and remove wine bottles.  The glass doors allow users to see the wine stored in the refrigerator and display their wine collection to others.  Consumers also desire black shelf fronts and glass doors for aesthetic reasons, including to match other elements of their décor and display their wine collections.  Finally, Vinotemp's trade dress is not protectable because it is generic and overbroad.  Not only does Vinotemp seek to protect a generalized type of appearance common to

1

many wine refrigerators, but its claimed trade dress is inconsistent among the various wine refrigerators with black shelf fronts and glass doors sold by Vinotemp.

Given the dispositive nature of trade dress validity issue and the procedural posture of the case (the parties have engaged in only minimal discovery), this case is ideally suited for bifurcating the issue of trade dress validity from the issues of trade dress infringement and damages. The critical threshold issue of validity is likely to dispose of the entire claim and will therefore promote efficiency and expeditiousness. Bifurcation also will allow the parties to defer potentially-unnecessary expensive discovery. At minimum, the Court should limit discovery at this time and provide for early summary judgment on the issue of trade dress validity.

<u>**STATEMENT OF FACTS**</u>

Vinotemp asserts against Wine Enthusiast a claim for trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See generally* Am. Counterclaim (Dkt.#24). Vinotemp describes its trade dress as follows:

> Vinotemp claims a unique trade dress for wine storage units such as a wine rack or a refrigerator. The storage units have a glass front. There are individual shelves inside the units holding the bottles in a horizontal position, with the bases of the bottles facing outward. Each of the shelves has a black front. The black front is high enough to cover most of the bottom half of each bottle. This arrangement gives the impression the bottles are "floating" within the storage unit. Photographs showing Vinotemp's highly recognizable black wine rack face are provided below:

 

*Id.* ¶ 14.

2

Vinotemp has sold wine refrigerators of varying designs with glass doors, black shelf fronts and shelves that hold the wine bottles horizontally with the bases facing outward, including in different colors, shapes and sizes and with shelves of different widths, heights, placement, proportionality and quantities:



Claverie Decl. Ex. A.

At least one of Vinotemp's models also is offered with shelf fronts in natural wood and stainless steel, in addition to black:



*Id*. Ex. B.

Many of these wine refrigerators (including the refrigerator referenced by Vinotemp in its pleading) are marketed by Vinotemp with both the bases ***and tops*** of the wine bottles facing outward, not just with the bases facing outward as described in Vinotemp's pleading:

 

*Id*. Ex. A.   Vinotemp also encourages users to remove shelves from its wine storage units to accommodate larger bottles and to adjust shelves to stack bottles in layers on a single shelf.   *Id*. Exs. C & G.   Although Vinotemp does not allege when it acquired its purported trade dress

rights, it appears from Vinotemp's historical website that Vinotemp first began using black shelf fronts and glass doors on its wine refrigerators in or about December 2011.  *Id*. Ex. D.

Vinotemp and third parties have touted the utilitarian and aesthetic functionality of Vinotemp's claimed trade dress:

- The CEO of Vinotemp has publicized in connection with Vinotemp's purported trade dress that "[a]t Vinotemp we're dedicated to delivering wine storage options that are highly-functional." *Id*. Ex. G.

- At least one third party has concluded that Vinotemp's "Black wood . . . shelves are . . . functional." *Id*. Ex. F.

- Vinotemp boasts of its trade dress that the "black wooden lip cradles your collection" and "provid[es] you with easy access to every bottle in your collection." *Id*. Ex. G.

- Vinotemp also highlights that its glass doors "[d]isplay your favorite bottles," "create a stunning display from your collection," "allow a visual display of your private wine selection" and "elegantly display your wine." *Id*. Exs. G, H & I.

- A third party article posted by Vinotemp on its website states that "[m]ost wine coolers are designed to display the bottles through tinted glass doors." *Id*. Ex. J.

- At least one third party has touted Vinotemp's "black bottle racks attractively complement the styling of the unit" and that the "wine cooler is sleekly styled, with . . . glass as its styling theme." *Id*. Ex. F.

- Vinotemp itself touts that its "black wire racking with wooden lip gives a modern seamless look to this cooler" and makes "for a clean, modern appearance." *Id*. Ex. G.

- Vinotemp also has admitted that it designed its trade dress to "complement a variety of kitchen designs" and has noted the importance that the "wood grain . . . components of the wine cellar match perfectly to the existing interior." *Id*. Ex. G.

Vinotemp apparently claims that two series of products sold by Wine Enthusiast infringe Vinotemp's purported trade dress, the Evolution Series and the EuroCave Revelation Series wine refrigerators:

27722/004/2511918

<u>Evolution Series</u>                    <u>EuroCave Revelation Series</u>

    

Milov Decl. ¶ 2.  The Evolution Series is sold under the WINE ENTHUSIAST brand.  Wine Enthusiast is a reseller of the EuroCave Revelation Series.  Diamond Decl. ¶¶ 2-3.

Glass doors and black shelf fronts that hold bottles horizontally, including with the bases facing outward, are and have been for decades common, decorative and utilitarian features of numerous wine refrigerators.  As far back as around 1996, at least fifteen years before Vinotemp first used its claimed trade dress, EuroCave sold the EuroCave 140 wine refrigerator that contained black shelf fronts, held bottles horizontally, including with the bases facing outward, and was offered with a glass door:



Diamond Decl. ¶ 4.  Since at least as early as mid-2011, also before Vinotemp first used its purported trade dress, U-Line has sold the Wine Captain wine refrigerators that contain black

6

shelf fronts, hold bottles horizontally, including with the bases facing outward, and are offered with a glass door:



*Id.* ¶ 5; Claverie Decl. Ex. E.  Since at least as early as mid-2011, also before Vinotemp first used its purported trade dress, Marvel has sold the Chateau series wine refrigerators that contain black shelf fronts, hold bottles horizontally, including with the bases facing outward, and are offered with a glass door (black shelf fronts optional per June 2011 catalog):

 

Diamond Decl. ¶ 6; Claverie Decl. Ex. E.  Beginning in at least as early as 2012, at or about the time Vinotemp first used its purported trade dress, third party Avanti sold wine refrigerators that contained black shelf fronts, held bottles horizontally, including with the bases facing outward, and were offered with a glass door:

 

7

Diamond Decl. ¶ 7; Claverie Decl. Ex. E.  Since at least as early as 2013, EuroCave has sold the Revelation Series wine refrigerators (one of the apparently accused products) that contain black shelf fronts, hold bottles horizontally, including with the bases facing outward, and are offered with a glass door:

 

Diamond Decl. ¶ 8.  Wine Enthusiast began offering these EuroCave wine refrigerators in or about early-2014, and they appeared on the cover of Wine Enthusiast's Spring 2014 mail catalog cover.  *Id*. ¶ 9.  Moreover, Vinotemp has known about these EuroCave wine refrigerators since at least 2014, when it made an initial claim directly against EuroCave concerning the products.  *Id*. ¶ 10.  Vinotemp quickly abandoned its claim against EuroCave, despite now accusing the same EuroCave products sold by Wine Enthusiast as infringing its trade dress.  *Id*.

In this action, the parties each have served and provided written responses to initial document requests and limited interrogatories pursuant to Local Rule 33.3.  Milov Decl. ¶ 3. Neither party has produced any documents, except in connection with the separate schedule for patent disclosures regarding Vinotemp's unrelated utility patent claim.  *Id*.  Neither party has yet noticed any party depositions, although Wine Enthusiast has issued subpoenas on third party retailers of Vinotemp products seeking testimony and documents primarily concerning Vinotemp's purported trade dress.  *Id*.

## **LEGAL STANDARD**

Courts have "broad discretion" to bifurcate discovery and trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues. *Brown v. City of N.Y.*, 2016 U.S. Dist. LEXIS 18670, at \*4 (S.D.N.Y. Feb. 16, 2016). Rule 42(b) allows bifurcation to be ordered where separate trials would be "in furtherance of convenience or . . . [to] avoid prejudice, or . . . [be] conducive to expedition and economy." Fed. R. Civ. P. 42(b). Additionally, Rule 26 of the Federal Rules of Civil Procedure "vests the trial judge with broad discretion to tailor discovery narrowly and tailor the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Courts in this District have bifurcated discovery and trial in cases where a subsequent issue in the case hinges on the determination of a preliminary dispositive issue. *See, e.g., Brown*, 2016 U.S. Dist. LEXIS 18670, at \*4 ("since there is no finding of *Monell* liability without first finding a constitutional violation, in an effort to promote convenience and economy, courts in this circuit have bifurcated *Monell* claims and stayed their discovery until a plaintiff has succeeded in establishing liability on the part of the individual defendants"); *Williams v. Boulevard Lines, Inc.*, 2013 U.S. Dist. LEXIS 149707, at \*24 (S.D.N.Y. Sep. 30, 2013) (bifurcating where issue of joint and several liability would be moot if plaintiff failed to establish his underling personal injury claims). In determining whether bifurcation is appropriate, courts consider several factors, including "the degree of difference between the issues to be tried separately, the overlap or lack thereof in the proof, and any prejudice to either side by the district court's failure to adopt its view of the matter." *Chevron Corp. v. Donziger*, 800 F. Supp. 2d 484, 491 (S.D.N.Y. 2011).

## ARGUMENT

I. **THE COURT SHOULD BIFURCATE THE ISSUES OF TRADE DRESS VALIDITY AND TRADE DRESS INFRINGEMENT/DAMAGES**

    A. **The Dispositive Issue of Trade Dress Validity and the Speculative Nature of Vinotemp's Purported Trade Dress Rights Warrant Bifurcation in this Case**

        1. **Trade Dress Validity Is a Threshold Issue that Is Case Dispositive**

Trade dress infringement claims "are analyzed in *two stages*."   Order on Motion to Dismiss (Dkt.#41) at 13 (citing *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 216 (2d Cir. 2012)) (emphases added).   "First, plaintiff must establish that its mark is entitled to protection. . . . Second, a plaintiff must plead that the defendant's use of a similar mark is likely to cause consumer confusion."   *Id.*   Absent valid and protectable trade dress, a plaintiff's claim fails as a matter of law and there is no need to examine likelihood of confusion or damages.   *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997) ("In light of our conclusion above [finding that plaintiff's trade dress was not distinctive], we do not need to address the district court's likelihood of confusion analysis to resolve the Lanham Act claim"); *Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, 2002 U.S. Dist. LEXIS 12669, at *21 (S.D.N.Y. July 15, 2002) (Cote, J.) (granting summary judgment finding no protectable trademark).

Thus, in trademark actions in which the validity of the asserted designations is disputed, courts have successfully employed the practical approach of first addressing the threshold issue of trademark validity before delving into other issues of infringement and damages.   For example, in *Advertise.com, Inc. v. AOL LLC*, 2011 U.S. Dist. LEXIS 162851 (C.D. Cal. Aug. 15, 2011), the Court bifurcated the issues of trademark validity and trademark infringement/damages where the issue of trademark validity would be dispositive, the plaintiff's claimed trademark

10

rights were questionable, the parties had yet to engage in significant discovery and the parties would incur substantial expenses for discovery of issues that would be moot if the claimed trademark rights were deemed invalid.  And in *Image Online Design, Inc. v. Core Ass'n*, 120 F. Supp. 2d 870, 872 (C.D. Cal. 2000), the court limited initial discovery to the issue of the validity of the plaintiff's trademark before eventually granting summary judgment based on invalidity. In other intellectual property contexts, courts similarly have severed the threshold issue of whether the plaintiff owns valid rights and limited discovery or trial to that issue at the outset. *See, e.g., SanDisk Corp. v. STMicroelectronics Inc.*, 2009 U.S. Dist. LEXIS 45931 (N.D. Cal. May 19, 2009) (because a counterclaim alleging fraud on the PTO may moot an infringement claim, "convenience and judicial economy would be best served by" adjudicating the counterclaim first); *ASM Am., Inc. v. Genus, Inc.*, 2002 U.S. Dist. LEXIS 1351, at *22 (N.D. Cal. Jan. 9, 2002) ("Resolution of the invalidity issue may dispose of some of the antitrust counterclaims altogether, and may potentially narrow the damages inquiry on any remaining claims to particular products or product lines"); *U.S. Ethernet Innovations, LLC v. Tex. Instruments Inc.*, 2014 U.S. Dist. LEXIS 81812, at *2-3 (E.D. Tex. June 15, 2014) ("In this patent case, the Court bifurcated the issues of patent infringement and validity of the patents"); *Milne v. Stephen Slesinger, Inc.*, 2007 U.S. Dist. LEXIS 102377, at *22 (C.D. Cal. Feb. 15, 2007) (bifurcating issue of copyright termination prior to infringement determination).

Bifurcation is especially appropriate here.  Not only is the issue of Vinotemp's claimed trade dress rights potentially dispositive, but such rights are tenuous at best and likely will be found unprotectable upon summary judgment, including because the trade dress lacks acquired distinctiveness through secondary meaning and is functional, overbroad and generic.

2.    **Vinotemp's Will Not Be Able to Carry Its Burden to Show It Is Entitled to Trade Dress Protection over Common, Decorative and Utilitarian Features of Wine Refrigerators**

Vinotemp has the heavy burden to establish that its unregistered purported trade dress: (1) is distinctive, in that the identifies the ***source*** of the plaintiff's goods; (2) is not functional; and (3) is not overbroad or generic. *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114-16 (2d Cir. 2001). Vinotemp will fail on all three counts.

First, Vinotemp's trade dress lacks distinctiveness and does not indicate Vinotemp as the source of the products. The configuration of a product, such as a wine refrigerator, can never be inherently distinctive. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 212 (2000).

> In the case of product design, . . . ***consumer predisposition to equate the feature with the source does not exist***. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs -- such as a cocktail shaker shaped like a penguin -- is intended not to identify the source, but to render the product itself more useful or more appealing.

*Id*. at 213 (emphasis added). *See also Yurman Design*, 262 F.3d at 115 ("Product designs are more likely to be seen merely as utilitarian or ornamental aspects of the goods"). A claimed product configuration trade dress thus must have acquired distinctiveness through secondary meaning in order to be protectable. *Id*. at 213-14. Trade dress "has acquired secondary meaning, when, in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Christian Louboutin*, 696 F.3d at 216 (citations and quotations omitted). Trade dress protection is "not intended to protect innovation by giving the innovator a monopoly," which instead is the function and purview of patent law. *Christian Louboutin*, 696 F.3d at 216. A court thus must "exercise particular caution when extending protection to product designs." *Yurman Design*, 262 F.3d at 114.

The length and exclusivity of use are two important factors relevant to secondary meaning. *See Christian Louboutin*, 696 F.3d at 226. Vinotemp has been selling its wine

12

refrigerators with its claimed trade dress only since late 2011, approximately two and half years before Wine Enthusiast began selling the EuroCave Revelation Series products.   Secondary meaning cannot be established in such a short time period.   *See, e.g., Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1327 (Fed. Cir. 1999) (two years use insufficient to develop secondary meaning); *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1301 (5th Cir. 1985) (same). Moreover, as noted above, both before and after Vinotemp first began selling wine refrigerators with its claimed trade dress, various third parties have sold wine refrigerators with similar characteristics, essentially foreclosing Vinotemp's claim that consumers associate these features solely with Vinotemp.   *See, e.g., Forschner Group v. Arrow Trading Co.*, 124 F.3d 402, 409 (2d Cir. 1997) ("The color red does not act as a symbol to distinguish Forschner's knives from its competitors, nor does it identify Forschner as the source because, as discussed above, there are numerous companies that manufacture red multifunction pocketknives"); *Mana Products, Inc. v. Columbia Cosmetics, Mfg. Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995) ("There are countless numbers of cosmetic companies that sell black compacts"); *Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998) (wide spread use of grape leaf emblem in connection with wine rendered design "generic" and non-protectable); *Elements/Jill Schwartz*, 2002 U.S. Dist. LEXIS 12669, at *18 (denying trade dress protection where "many producers of frames, albums, and journals use identical or similar elements in their designs").

Second, even in the unlikely event that Vinotemp can show its trade dress has acquired distinctiveness through secondary meaning, its trade dress still is not entitled to protection because it is functional.  The requirement of non-functionality "prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature."   *Qualitex Co. v.*

13

*Jacobson Prods. Co., Inc.*, 514 U.S. 159, 164 (1995).  Trade dress is functional if: (1) it is essential to the use or purpose of the product; (2) it affects the cost or quality of the product; or (3) it would put competitors at a significant, non-reputation-related disadvantage.  *See id.* at 165; *TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 33-34 (2001).

Vinotemp's alleged trade dress is functional because it serves utilitarian purposes for wine storage.  Indeed, Vinotemp's CEO has touted in connection with Vinotemp's purported trade dress that "[a]t Vinotemp we're dedicated to delivering wine storage options that are highly-functional."  Claverie Decl. Ex. G.  Specifically, the shelf fronts help keep the wine bottles in place and help users slide the shelves in and out to view, store and remove wine bottles.  *See Peterbrooke Franchising of Am., LLC v. Miami Chocolates*, LLC, 2016 U.S. Dist. LEXIS 189180, at *15 (S.D. Fla. June 29, 2016) ("Once stripped of the Peterbrooke logo, the decor of the Shop is more akin to a blank canvas comprised of common functional elements (e.g. glass shelves, white walls, laminate flooring, etc.").  Although self-evident, at least one third party has recognized these utilitarian aspects, noting that Vinotemp's "Black wood . . . shelves are . . . functional."  Claverie Decl. Ex. F.  Vinotemp itself touts that the "black wooden lip cradles your collection"  and "provid[es] you with easy access to every bottle in your collection." *Id*. Ex. G.  The glass front also has utilitarian features in that it allows users to see the wine stored in the refrigerator and to display their wine collections to others.  *See Storck USA, L.P. v. Farley Candy Co., Inc.*, 821 F. Supp. 524, 529 (N.D. Ill. 1993), *aff'd*, 14 F.3d 311 (7th Cir. 1994) ("transparent plastic window[s]" are "clearly functional to display the individually wrapped candy pieces inside the respective packages"); *Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963, 987 (S.D. Cal. 2012) ("the packaging for wearing apparel serves a utilitarian advantage because it permits the purchaser to view the product").  Vinotemp

14

itself highlights that its wine refrigerators with glass doors "[d]isplay your favorite bottles," "create a stunning display from your collection," "allow a visual display of your private wine selection" and "elegantly display your wine."  Claverie Decl. Exs. G, H & I.  A third party article posted by Vinotemp on its website similarly states that "[m]ost wine coolers are designed to display the bottles through tinted glass doors."  *Id.* Ex. J.

Moreover, protecting these basic decorative features would put Wine Enthusiast and third parties in the wine refrigerator industry at a significant, non-reputation-related disadvantage to legitimately compete.  Consumers clearly are interested in black shelf fronts and glass doors for aesthetic reasons, including to match other elements of their décor and display their wine collections.  *See, e.g., Brunswick Corp. v. British Seagull Ltd.*, 35 F.3d 1527, 1533 (Fed. Cir. 1994) (black motors deemed functional because color was compatible with many boats' color scheme and black made the engine look smaller); *Deere & Co. v. Farmhand, Inc.*, 560 F. Supp. 85, 98 (S.D. Iowa 1982), *aff'd*, 721 F.2d 253 (8th Cir. 1983) (color green functional where farmers preferred to match color of loaders to color of tractors).  At least one third party has noted Vinotemp's "black bottle racks attractively complement the styling of the unit" and that the "wine cooler is sleekly styled, with . . . glass as its styling theme."  Claverie Decl. Ex. F.  Vinotemp itself touts that its "black wire racking with wooden lip gives a modern seamless look to this cooler" and makes "for a clean, modern appearance," has admitted that it designed its trade dress to "complement a variety of kitchen designs" and has noted the importance that the "wood grain . . . components of the wine cellar match perfectly to the existing interior."  *Id.* Ex. G.  Just as one company cannot claim a monopoly over refrigerators with stainless steel doors and shelves with white fronts, Vinotemp cannot claim a monopoly over wine refrigerators with glass doors and shelves with black fronts.  *See, e.g., Predator Int'l, Inc. v. Gamo Outdoor USA,*

*Inc.*, 669 F. Supp. 2d 1235, 1249-50 (D. Colo. 2009) (no trade dress protection for red-tipped airgun pellets "because of the design's 'intrinsic consumer-desirability'"); *Stephen W. Boney, Inc. v. Boney Servs.*, 127 F.3d 821, 828 (9th Cir. 1997) ("SWB has produced no evidence suggesting that wood paneling, large produce areas, and low gondolas serve any purpose in its stores other than to provide an attractive means of displaying produce").

Third and finally, Vinotemp's trade dress is not protectable because it is both generic and overbroad.  "[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("The level of generality at which a trade dress is described, as well as the fact that a similar trade dress is already being used by manufacturers of other kinds of products, may indicate that that dress is no more than a concept or idea to be applied to particular products").  Vinotemp's claimed trade dress is nothing more than a generic style of wine refrigerator with black shelf fronts and glass doors, long common to numerous third party products.  *See, e.g., Peterbrooke Franchising of Am.*, 2016 U.S. Dist. LEXIS 189180, at *14-15 ("we find nothing particularly unique, unusual, or unexpected in a chocolate or dessert shop's use of white Formica or glass shelving, track lighting, laminate wood flooring, or the accent colors white, pink, and blue"); *In re Hudson News Co.*, 39 U.S.P.Q.2d 1915, 1923 (T.T.A.B. 1996), *aff'd per curiam*, 114 F.3d 1207 (Fed. Cir. 1997) ("blue motif" used in retail stores would likely be viewed by prospective purchasers as "nothing more than interior decoration" that "could be found in any number of retail establishments. Undoubtedly such features are usually perceived as interior decoration or ornamentation").  Vinotemp's qualification that its claimed trade dress makes bottles appear to "float" does not transform its claimed trade dress beyond an abstract idea.  *See Landscape*

16

*Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997) (definition of trade dress in outdoor institutional furniture that consisted of massive design which appears to "float," was "too abstract to qualify as trade dress").

Moreover, Vinotemp's description that its trade dress could encompass a "wine rack *or* a refrigerator" and that the trade dress "gives the impression the bottles are 'floating' within the storage unit" shows its claimed trade dress is overbroad. The Second Circuit recently affirmed the dismissal of claims based on alleged trade dress for a giant swan pool float where, as here, the plaintiff's description of its trade dress contained "alternative features" and "subjective descriptors." *Int'l Leisure Prods. v. Funboy LLC*, 2018 U.S. App. LEXIS 25262, at *5 (2d Cir. Sep. 6, 2018). Vinotemp's (1) photographs showing wine bottles in its claimed trade dress facing outward both from the base and top, contrary to its trade dress description, (2) products showing varying designs of wine refrigerators with black shelves and glass doors of all shapes, positions and sizes, and (3) literature promoting the removal of the shelves from the unit and stacking multiple layers of bottles on a single shelf all further show that Vinotemp's claimed trade dress is not consistent in use and thus is overbroad. *See Elements/Jill Schwartz*, 2002 U.S. Dist. LEXIS 12669, at *21 (summary judgment where plaintiff did not use its defined trade dress consistently); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 542 (S.D.N.Y. 2003) ("A trade dress which is . . . inconsistent among its products cannot be distinctive"). The consistent element across all of Vinotemp's wine refrigerators is the use of its house mark VINOTEMP, which, unlike its claimed trade dress of ordinary, common-place design features, denotes the source of its products. Indeed, in the likelihood of confusion analysis, courts typically find that the prominent use of a house mark clearly identifies and distinguishes between the sources of competing trade dress. *See Bristol-Myers Squibb Co. v.*

17

*McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1044-45 (2d Cir. 1992); *KIND, LLC v. Clif Bar & Co.*, 2014 U.S. Dist. LEXIS 81097, at *24-28 (S.D.N.Y. June 12, 2014).

Because Vinotemp's alleged trade dress lacks secondary meaning, is functional and is generic and overbroad, it is not entitled to protection.  Vinotemp's trade dress claim thus likely will be dismissed on summary judgment.[1]

### B.    Bifurcation is Conducive to Expedition and Economy

Expedition of the case and conservation of judicial resources are "especially weighty consideration[s] where the determination of one claim may obviate the need to adjudicate one or more other claims."  8 James Wm. Moore et al., *Moore's Federal Practice* ¶ 42.20[4][d] (3d ed. 2005).  As discussed above, early adjudication of the issue of trade dress validity may obviate the need to litigate the issues of likelihood of confusion and damages, including the need to engage in significant additional discovery, to conduct surveys and to engage experts on those complex issues, resulting in the savings of significant expenses and time.  *See Advertise.com*, 2011 U.S. Dist. LEXIS 162851, at *10 ("denial of the Motion will require both parties to incur substantial additional expenses for discovery on issues that may be moot if AOL's marks are deemed invalid.  Bifurcation may allow for a more expeditious final resolution, because a determination in Phase 1 that AOL's marks are invalid would eliminate the need for further proceedings to determine infringement and damages, thereby additionally promoting the interests of judicial economy").  Indeed, the issues of trademark validity and infringement/damages are sufficiently

---

[1]    Tellingly, Vinotemp has applied for federal registration of ***other*** alleged trade dress concerning its wine refrigerators, namely, U.S. App. Ser. No. 87404929.  Claverie Decl. Ex. K.   That Vinotemp has not sought federal protection over its trade dress alleged in this matter, when it has sought protection over other elements of wine refrigerators, undermines Vinotemp's claim of valid trade dress here.   Moreover, the USPTO has refused to register Vinotemp's other alleged trade dress, finding it lacks secondary meaning.  *Id.*

distinct such that only limited evidence (such as alleged evidence of consumer recognition of Vinotemp's alleged trade dress, or lack thereof) will overlap.[2]

### C.    Bifurcation Will Not Prejudice Vinotemp

Vinotemp cannot show that bifurcation is prejudicial to it.  Bifurcating trademark validity from damages and infringement will not add any significant costs or time to the case.  To the contrary, the need for further discovery or a trial on infringement and damages will be eliminated and both sides could avoid the significant associated fees and costs.  *See Giro Sport Design, Inc. v. Pro-Tee, Inc.*, 10 U.S.P.Q.2d 1863, 1864 (N.D. Cal. 1989) (considering the risk of prejudice to a trademark holder and concluding that bifurcation of liability from damages would not cause prejudice and would only prevent discovery of information not relevant to liability.  *See also Advertise.com*, 2011 U.S. Dist. LEXIS 162851 at *10.  Moreover, Vinotemp knowingly co-existed in the marketplace with the accused EuroCave product for at least three years before making any claims against Wine Enthusiast (after abandoning its prior direct claims against EuroCave) and cannot complain of any delay based on its own failure to act earlier.  Nor has Vinotemp yet produced any documents or noticed any depositions.  *See Avia Grp. Int'l, Inc. v. Nike, Inc.*, 1991 U.S. Dist. LEXIS 20492, at *6 (D. Or. Sep. 17, 1991) (bifurcating validity,

---

[2]     *Compare Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 384 (2d Cir. 2005) (relevant factors to determine likelihood of confusion include: strength of trademark; similarity of marks; proximity of products and their competitiveness with one another; evidence that senior user may "bridge the gap" by developing product for sale in market of alleged infringer's product; evidence of actual consumer confusion; evidence that imitative mark was adopted in bad faith; respective quality of products; and sophistication of consumers in relevant market) with *Christian Louboutin*, 696 F.3d at 226 ("Factors that are relevant in determining secondary meaning include (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and, (6) length and exclusivity of the mark's use") (citations and internal quotations omitted) and *id.* at 218-20 (discussing functionality).

liability and damages issues in patent case "before substantial discovery has occurred"); *Giro Sport Design*, 10 U.S.P.Q.2d at 1863 (bifurcating discovery and trial before depositions).

Equitable considerations also favor an early determination of whether the rights claimed by Vinotemp are as hollow as Wine Enthusiast believes based upon the record thus far. It would be inequitable to require the parties to continue contentious discovery and to put on their complete cases and to tie up the Court in much longer proceedings when such a stark threshold issue presents itself. *See Advertise.com*, 2011 U.S. Dist. LEXIS 162851 at *10.

## CONCLUSION

Based on the foregoing, the Court should grant Wine Enthusiast's motion to bifurcate. In the alternative, the Court should limit discovery on the trade dress claim at this time to the issue of trade dress validity and provide an early deadline for summary judgment on the issue.

Dated: New York, New York  
          October 4, 2018

Respectfully submitted,  
COWAN, LIEBOWITZ & LATMAN, P.C

By:     s/ Eric J. Shimanoff    
Eric J. Shimanoff (ejs@cll.com)  
Mark Montague (mxm@cll.com)  
Joelle A. Milov (jam@cll.com)  
COWAN, LIEBOWITZ & LATMAN, P.C.  
114 West 47th Street  
New York, New York 10036-1525  
(212) 790-9200  
*Attorneys for Plaintiff and Counterclaim Defendant Wine Enthusiast, Inc.*

27722/004/2511918