```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
WINE ENTHUSIAST, INC.,                   :
                                         :
                         Plaintiff,      :    17cv6782(DLC)
                                         :
              -v-                        :    OPINION AND ORDER
                                         :
VINOTEMP INTERNATIONAL CORPORATION,      :
                                         :
                         Defendant.      :
                                         :
---------------------------------------- X
```

APPEARANCES:

For Wine Enthusiast:
Michael Hurey
Kleinberg & Lerner, LLP
1875 Century Park, Ste 1150
Los Angeles, CA 90067

For Vinotemp:
Eric J. Shimanoff
Mark Montague
Joelle A. Milov
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, New York 10036

DENISE COTE, District Judge:

   Defendant and counterclaim-plaintiff Vinotemp International Corporation ("Vinotemp") alleges that plaintiff and counterclaim-defendant Wine Enthusiast, Inc. ("Wine Enthusiast") infringed United States Patent No. 7,882,967 ("the '967 Patent"), entitled "Modular Wine Rack System." The '967 Patent describes a "modular wine rack system" that stores wine "with

the label facing the user."  The figures in the patent illustrate racks consisting of curved rods and flat plates.  The parties have presented their proposed constructions of the '967 Patent's claims pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370 (1996).  The following sets forth the Court's construction of disputed terms.  The Court adopts Vinotemp's construction of the first disputed term and Wine Enthusiast's construction of the second and third disputed terms.  The remaining terms do not require any construction.

## **Background**

The parties dispute the construction of four terms that appear in Claim 1, and one term that appears in Claim 5.  Vinotemp asserts that it is unnecessary to construe all but one of the disputed terms.  The relevant claims, with the disputed terms highlighted, are set forth below.

>Claim 1 of the '967 Patent describes:
>
>A modular wine rack system comprising:
>
>A pair of substantially identical support arms for supporting wine bottles having a body and a neck, each of said arms having a proximal end and a distal end, each of said support arms having at least one <u>indentation</u> capable of supporting a wine bottle, and each of said <u>indentations</u> having substantially identical dimensions;
>
>Wherein each of said support arms has <u>mounting means</u> at said proximal end mounting said support arms in a cantilevered position and wherein each of said distal ends is free; and

A <u>support means</u> receiving said pair of support arms substantially horizontally aligned in a cantilevered position and spaced apart to receive a wine bottle in said <u>indentations</u>; and wherein

said <u>support arms can be disposed in two different positions</u> by adjusting the distance therebetween such that in a first one of the positions, said support arms are spaced relatively close together so that the body of a wine bottle is supported by an <u>indentation</u> in each of the support arms thereby supporting said wine bottle in a substantially horizontal position and, alternatively, in a second one of said positions, said support arms are spaced relatively further apart so that the body of the wine bottle is supported by an <u>indentation</u> in one support arm and the neck of the bottle is supported by an <u>indentation</u> in the other support arm thereby supporting said wine bottle with its neck angled downwardly.

Claims 2-4 of the '967 Patent describe the same wine rack system in Claim 1, but with different numbers of "indentations." Claim 5 describes "[t]he wine rack system of claim 1 wherein said mounting means are a <u>vertical plate</u>."

## Discussion

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." <u>Aventis Pharm. Inc. v. Amino Chems. Ltd.</u>, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citation omitted). In construing a patent claim, which is a question of law, courts "should look first to the intrinsic evidence of record, <u>i.e.</u>, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." <u>Am. Calcar, Inc. v. Am. Honda Motor Co., Inc.</u>, 651 F.3d 1318, 1336 (Fed. Cir. 2011)

(citation omitted).  Courts, however, should not read meaning into claim language that is clear on its face.  See Tate Access Floors, Inc. v. Interface Architectural Res., Inc._, 279 F.3d 1357, 1371 (Fed. Cir. 2002).  Claim construction is not a backdoor process by which the scope of a claim is narrowed or expanded.  See Terlep v. Brinkmann Corp., 418 F.3d 1379, 1382 (Fed. Cir. 2005).

Claim terms are generally given their "ordinary and customary meaning" as understood by a person of "ordinary skill in the art at the time of invention."  Aylus Networks, Inc. v. Apple Inc., 856 F.3d 1353, 1358 (Fed. Cir. 2017) (citation omitted).  The ordinary meaning of a claim term is its meaning "to the ordinary artisan after reading the entire patent."  Id. (citation omitted).

If a claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim, courts turn in particular to the specification to assist in claim construction.  Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1361 (Fed. Cir. 2013).  Through the specification, a patentee "can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning."  Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc., 467 F.3d 1370, 1376 (Fed. Cir. 2006)

4

(citation omitted). "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term." Power Integrations, 711 F.3d at 1361 (citation omitted). While courts use the specification "to interpret the meaning of a claim," they must "avoid the danger of reading limitations from the specification into the claim" itself. Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005). Although the specification often describes specific embodiments of the invention, the Federal Circuit has repeatedly warned against confining the claims to those embodiments. Id.

A court may consider extrinsic evidence, such as dictionaries and treatises, but such extrinsic evidence is "generally of less significance than the intrinsic record." Takeda Pharma. Co. Ltd. v. Zydus Pharma. USA, Inc., 743 F.3d 1359, 1363 (Fed. Cir. 2014). If the meaning of the claim is clear from the intrinsic evidence alone, resort to extrinsic evidence is improper. Boss Control, Inc. v. Bombardier Inc., 410 F.3d 1372, 1377 (Fed. Cir. 2005).

35 U.S.C. § 112(f) applies a special rule of construction to so-called "means-plus-function" elements of a patent claim. Section 112(f) provides:

> an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim

5

> shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f). "Section 112(f) allows patentees to put structural details into the specification and build into the literal coverage of the claim a certain scope for equivalents in performing a defined function. The price of using this form of claim, however, is that the claim be tied to a structure defined with sufficient particularity in the specification." Ibormeith IP, LLC v. Mercedes-Benz USA, LLC, 732 F.3d 1376, 1379 (Fed. Cir. 2013) (citation omitted). "Construing a means-plus-function claim term is a two-step process. The court must first identify the claimed function. Then, the court must determine what structure, if any, disclosed in the specification corresponds to the claimed function." Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1351 (Fed. Cir. 2015) (citation omitted).

When determining whether a given element of a claim is a means-plus-function element under Section 112(f) "the essential inquiry [is] whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." Zeroclick, LLC v. Apple, Inc., 891 F.3d 1003, 1007 (Fed. Cir. 2018) (citation omitted). That determination is made "on an element-by-element basis, and in light of evidence intrinsic and extrinsic to the

6

asserted patents." Id. Use of the word "means" in a patent claim creates a rebuttable presumption that Section 112(f) applies. Diebold Nixdorf, Inc. v. Int'l Trade Comm'n, 899 F.3d 1291, 1298 (Fed. Cir. 2018).

Patents are presumed valid, and the burden of establishing invalidity of a patent or any claim thereof is on the party asserting invalidity. 35 U.S.C. § 282(a). "At trial, the party challenging validity must prove that the claims are invalid by clear and convincing evidence." Polara Eng'g, Inc. v. Campbell Co., 894 F.3d 1339, 1348 (Fed. Cir. 2018).

35 U.S.C. § 112(b) requires that a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." A patent that does not meet this requirement is said to be "indefinite" and is therefore invalid. See Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014). A patent is invalid for indefiniteness "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Id. Under Nautilus, the key question is whether the claims -- as opposed to particular claim terms -- inform a skilled reader with reasonable certainty about the

7

scope of the invention. Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP, 838 F.3d 1224, 1231 (Fed. Cir. 2016) (citation omitted). Nevertheless, an indefiniteness analysis is "inextricably intertwined with claim construction" and training indefiniteness analysis on individual claim terms is a "helpful tool." Id. at 1232 (citation omitted). "Indeed, if a person of ordinary skill in the art cannot discern the scope of a claim with reasonable certainty, it may be because one or several claim terms cannot be reliably construed." Id. The Federal Circuit has held that, as a matter of law, a patent which "recites both a system and the method for using that system . . . does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2." IPXL Holdings, LLC v. Amazon.com, Inc., 430 F.3d 1377, 1384 (Fed. Cir. 2005) (citing 35 U.S.C. § 112).

I. Disputed Terms

The parties have each proposed constructions of the term "indentation." While Wine Enthusiast proposes constructions for four additional terms, Vinotemp asserts that their plain and ordinary meaning should be used and that no further construction is necessary.[1]

---

[1] In the parties' Joint Disputed Claims Chart, which was submitted to the Court on August 24, 2018, Vinotemp also

a. "indentation"

Wine Enthusiast argues that the term "indentation" in claims 1-4 should be construed as "a bend, an arc, or a curve in a continuous solid wire or rod." Vinotemp contends that the term should be construed in accordance with its ordinary and customary meaning, which includes "a recess in a surface" and "a part of a surface that curves inward."

Wine Enthusiast improperly imports a limitation into the claim from some of the embodiments included in the specification. Wine Enthusiast's proposed construction is at odds with the plain and ordinary meaning of the term "indentation" and would even exclude certain embodiments that are depicted in the specification. Accordingly, "indentation" is construed to mean "a recess in a surface" or "a part of a surface that curves inward."

b. "mounting means"

Wine Enthusiast contends that the term "mounting means" is a "means-plus-function" limitation, and thus must be construed to cover those structures disclosed in the '967 Patent

---

proposed constructions for the terms "mounting means" and "support means." In their opening claim construction brief, however, Vinotemp withdrew its proposed constructions and now contends that the terms are unambiguous and should be construed in accordance with their ordinary meaning.

specification that perform the function of mounting the support arm in a cantilevered position and their equivalents. Wine Enthusiast proposes that the term "mounting means" in Claims 1 and 5 be construed to mean "a plate as shown as element 30 in Figs. 1, 7, 9, 13, 16, 17, and 18, a hook as shown in element 40 in Fig. 10, a mounting frame as shown as element 52 in Figs. 11 and 14, a small ball and keyhole slot as shown respectively in Figs. 3 and 12, and a screw as shown in Figs. 4 and 5; and equivalents of the foregoing under Section 112(f)."

Vinotemp does not directly address Wine Enthusiast's invocation of Section 112(f), but rather contends that the term "mounting means" should be given its plain and ordinary meaning because it is clear and unambiguous to a person of ordinary skill in the art. Because the use of the word "means" creates a presumption that the claim falls within the ambit of Section 112(f), and Vinotemp has not rebutted that presumption, the term "mounting means" is considered a means-plus-function element. Wine Enthusiast's proposed construction limits the meaning of the term to several examples in the specification that perform the function of "mounting," and their equivalents. Accordingly, the term "mounting means" is construed to mean "a plate as shown as element 30 in Figs. 1, 7, 9, 13, 16, 17, and 18, a hook as shown in element 40 in Fig. 10, a mounting frame as shown as element 52 in Figs. 11 and 14, a small ball and keyhole slot as

shown respectively in Figs. 3 and 12, and a screw as shown in Figs. 4 and 5; and equivalents of the foregoing under Section 112(f)."

c. "support means"

Wine Enthusiast similarly contends that the term "support means" in Claim 1 is a means-plus-function element and should thus be construed to mean "a pegboard, a wall, a frame, or a freestanding base pedestal; and equivalents of the foregoing under Section 112(f)." Vinotemp contends that no construction is necessary for the phrase "support means" because it is clear and unambiguous to a person of ordinary skill in the art. For substantially the same reasons discussed above with respect to "mounting means," the term "support means" is a means-plus-function term under Section 112(f). Thus, the term "support means" is construed to mean "a pegboard, a wall, a frame, or a freestanding base pedestal; and equivalents of the foregoing under Section 112(f)."

d. "support arms can be disposed in two different positions"

The parties dispute whether the phrase "support arms can be disposed in two different positions" is indefinite, thereby effectively invalidating the Claim. Wine Enthusiast contends

that the phrase is indefinite because it recites both an apparatus and a method of using the apparatus.

The '967 Patent is not indefinite as a matter of law because it does not include method steps. Unlike the patent at issue in <u>IPXL Holdings</u>, Claim 1 does not require a user to take certain steps in order to operate the device. Rather, the phrase "can be disposed in two different positions," simply describes a feature of the structure -- i.e., it contains parts that are capable of being disposed in one of two different positions. Because the '967 Patent is entitled to a presumption of validity, and Wine Enthusiast has not overcome that presumption, the phrase "support arms can be disposed in two different positions" is construed to have its ordinary meaning.

e. "vertical plate"

Wine Enthusiast contends that the term "vertical plate" in Claim 5 should be construed to mean "a vertically-oriented flat, thin, rigid sheet of material." Vinotemp argues that no construction is necessary, and the term should be construed in accordance with its plain and ordinary meaning. Vinotemp is correct. The term "vertical plate" has a clear ordinary meaning to a person of ordinary skill in the art. There is no need to construe such a term.

## Conclusion

The disputed terms, as set forth in the parties' claim construction submissions, are construed as set forth above.

Dated: New York, New York
January 7, 2019

_____
DENISE COTE
United States District Judge